## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

**BRETT ALEXANDER JONES**                                             **PETITIONER**

**v.**                                                  **No. 1:22CV62-MPM-JMV**

**BURL CAIN**                                                      **RESPONDENT**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Brett Alexander Jones for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has moved to dismiss the petition as procedurally defaulted; Jones has responded, and the parties have submitted additional briefing. The matter is ripe for resolution. For the reasons set forth below, the motion by the State to dismiss the instant petition as procedurally defaulted will be denied. However, the instant petition for a writ of *habeas corpus* will nonetheless be denied, as the grounds for relief in the petition were decided on the merits in state court, and the petitioner has not shown that the state court unreasonably applied federal law – or determined the fact unreasonably in light of the evidence presented.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in

Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

**Overview of Facts and Procedural Posture**

In May 2005, a jury convicted Brett Jones of murdering his grandfather, Bertis Jones, and the Lee County Circuit Court sentenced him to life imprisonment (the "May 2005 judgment"). SCR, *Jones* I, Vol. 1 at 77, 79 (CP 73, 75); Vol. 4 at 75–77 (Tr. 374–76). He unsuccessfully challenged his conviction and sentence on direct appeal and post-conviction collateral review.[1] *Jones v. State*, 938 So. 2d 312 (Miss. Ct. App. 2006) ("*Jones* I"); *Jones v. State*, 122 So. 3d 725 (Miss. Ct. App. 2011), *reh'g denied*, Apr. 3, 2012, *aff'd in part, rev'd in part,* 122 So. 3d 698 (Miss. 2013) ("*Jones* II").

---

[1] He raised the same issues during state post-conviction review that he has brought in the instant *habeas corpus* petition.

However, after the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012), the Mississippi Supreme Court affirmed, in part, and reversed, in part, the Mississippi Court of Appeals' decision affirming the circuit court's denial of post-conviction relief; vacated Jones' life sentence; and remanded the case to the circuit court for resentencing.[2] *Jones v. State*, 122 So. 3d 698 (Miss. 2013), *reh'g denied* (Sept. 26, 2013) (limiting the court's review to the application of *Miller* to Jones' sentence) ("*Jones* III").

Following an evidentiary hearing, the Lee County Circuit Court resentenced Jones to life imprisonment on April 17, 2015 (the "April 2015 judgment"), in accordance with the Mississippi Supreme Court's procedures for applying *Miller*. SCR, *Jones* IV, Vol.1 at 46 (CP 43); Vol. 2 at 144, 146 (Tr. 141, 143). Jones appealed his April 2015 judgment, and the Mississippi Court of Appeals affirmed. *Jones v. State*, 285 So. 3d 626 (Miss. Ct. App. 2017) ("*Jones* IV"). After initially granting Jones' petition for certiorari review, the Mississippi Supreme Court determined "[u]pon further consideration," that "there is no need for further review and that the writ of certiorari should be dismissed." *Jones v. State*, 2018 WL 10700848, at *1 (Miss. Nov. 27, 2018). On April 21, 2021, the Supreme Court affirmed Jones' April 2015 judgment on certiorari review. *Jones v. Mississippi*, 141 S. Ct. 1307 (2021).

On April 18, 2022, Jones filed the current federal petition for a writ of *habeas corpus* in which he raises two claims of ineffective assistance of his original trial counsel. Doc. 1. He argues first that he can do this, and that his petition is timely, because "the Fifth Circuit Court of Appeals has held that a resentencing proceeding pursuant to *Miller v. Alabama* results in a 'new judgment' for the purposes

---

[2] The court will discuss the holding in *Miller* in a later section of the memorandum opinion.

- 3 -

of AEDPA."  Doc. 1 at 11 (citing *In re Greenwood*, 2022 WL 501393 (5th Cir. Feb. 18, 2022)); *see also* Doc. 1 at 1 (citing *Greenwood, supra*; *Magwood v. Patterson*, 561 U.S. 320 (2010)).  Indeed, Jones received a new sentence and thus a new judgment (the April 2015 judgment), and he filed the instant petition within a year of that judgment.

Jones did not raise his ineffective-assistance-of-trial-counsel claims in his appeal of his April 2015 judgment; nor did he seek state post-conviction collateral review challenging his April 2015 judgment.  Instead, after the Mississippi Supreme Court's decision affirming his April 2015 judgment, he sought federal *habeas corpus* review in this court.

### Detailed Procedural History

### Conviction and Sentence

On May 20, 2005, a jury convicted Jones of murder.  Exhibit A[3] (Judgment); *see also* SCR, *Jones* I, Vol. 1 at 77, 79 (CP 73, 75); Vol. 4 at 75–77 (Tr. 374–76).  The trial court sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Exhibit A; SCR, *Jones* I, Vol. 1 at 77, 79 (CP 73, 75); Vol. 4 at 75–77 (Tr. 374–76).  Jones was fifteen years old at the time of the murder, and under the applicable parole statute, he was ineligible for parole.  Miss. Code Ann. § 47-7-3(g) (Rev. 1995).

### Appeal of May 2005 Judgment

Jones, through counsel, appealed his conviction and sentence, asserting three assignments of error:  (1) the trial court erred in denying Jones' motions for directed verdict and for judgment notwithstanding the verdict; (2) the verdict was against the overwhelming weight of the evidence; and

---

[3] The exhibits referenced in this memorandum opinion may be found attached to the State's motion to dismiss the instant petition for a writ of *habeas corpus*.

(3) the trial court erred in admitting photographs of the victim over Jones' objection. SCR, *Jones* I, Brief of Appellant. On December 14, 2007, the Mississippi Court of Appeals affirmed Jones' murder conviction and life sentence. Exhibit B (*Jones* I).

**Post-Conviction Proceedings Challenging the May 2005 Judgment**

*Initial Filing in Mississippi Supreme Court.*

On December 14, 2007, Jones, through counsel, filed his "Application for Leave to File Motion for Post-Conviction Relief" in the Mississippi Supreme Court. SCR, Cause No. 2007-M-02219 at 89–143. Jones asserted numerous issues for the court's review, including six claims of ineffective assistance of trial counsel and a claim that his mandatory life sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. SCR, Cause No. 2007-M-02219 at 89–143. Relevant here, Jones alleged that his trial counsel were ineffective for "advising him against [a] mistrial motion when at least two jurors were exposed to extraneous material;" and (2) "fail[ing] to call exculpatory witnesses including Madge Jones, widow of the deceased, and Tony Jones, son of the deceased." SCR, Cause No. 2007-M-02219 at 102, 133. The Mississippi Supreme Court granted Jones leave to file his motion for post-conviction relief in the trial court. Exhibit C (Orders Granting Leave); *see also* SCR, Cause No. 2007-M-02219 at 2–3, 73–74.

*Post-Conviction Proceedings in Trial Court (Challenging the May 2005 Judgment)*

Jones then filed his "Motion for Post-Conviction Collateral Relief to Reverse the Judgment of Conviction and Vacate and Set Aside Sentence" in the Lee County Circuit Court. Again, as relevant here, Jones alleged that his trial counsel were ineffective for (1) "advising him against [a] mistrial motion when at least two jurors were exposed to extraneous material;" and (2) "fail[ing] to call exculpatory witnesses including Madge Jones, widow of the deceased, and Tony Jones, son of the deceased." SCR, *Jones* II, Vol. 1 at 11 (CP 7). The State answered Jones' motion and attached

affidavits from Jones' trial counsel, Robert Laher and Will Bristow.  SCR, *Jones* II, Vol. 1 at 49–59 (CP 45–55).

As to Jones' first claim of ineffectiveness, the State argued that "the record speaks for itself" and that "[n]o juror read a transcript of Defendant's statement without the objectionable material blacked out."  SCR, *Jones* II, Vol. 1 at 52 (CP 48); *see also* SCR, *Jones* I, Vol. 3 at 71–75 (Tr. 220–24).  Based on a reading of the transcripts, that statement is not accurate; as set forth below, a more accurate statement would be that, though one juror received an unredacted copy of the transcript, she did not pay attention to the additional text, skipped it to keep following the reading of the transcript, and could not recall what the additional text said.  Doc. 7-3 at 71-74.

Juror 23, Sandra Lyons, sent a note to the trial court stating that her copy of the statement transcript contained additional text not included in the transcript read to the jury.  In other words, she received an unredacted copy of the transcript.  The redacted part of Jones' statement referred to an incident with his stepfather in Florida – and that he was required to attend anger management classes.  Jones stated, "I have been in anger management but I didn't complete it because I moved here."  *Id*. at 71.  The investigator then asked, "Have you been in trouble before?"  *Id*.  Jones answered, "With my stepfather in Florida."  *Id*.

The trial court was unsure whether Ms. Lyons was the only juror who received an unredacted copy and suggested to counsel for the prosecution and defense that the court bring the jury and inquire whether anyone else received an unredacted copy.  *Id*. at 72.  The court suggested that, depending on the outcome of the inquiry, the court could continue the trial – or perhaps declare a mistrial.  *Id.*

Instead, the court called Ms. Lyons to testify regarding the incident.  *Id.* 72-73.  She stated that she received three copies of the transcript and passed one to Ms. Ruth.  *Id.* at 73.  She did not say who received the third copy – and she did not know whether the other two copies contained the redacted

- 6 -

text. *Id*. She noted that the text was different and skipped to the part that followed the transcript being read to the jury. *Id*. The court then asked Ms. Ruth whether her copy of the transcript contained additional text. *Id*. at 74. She responded, "I don't remember any discrepancies, you know, any different that what he was reading. I would have let you known [sic], Judge …. I mean, I really didn't notice it. I followed it word for word. I didn't notice any discrepancy." *Id*.

In response to Jones' second claim of ineffectiveness, his trial counsel stated that they "extensively interviewed two potential witnesses, Madge Jones and Tony Jones," and "while both witnesses were not present at the time of the crime, they would have corroborated defendant's claim of self-defense, as best they could[.]" SCR, *Jones* II, Vol. 1 at 57, 58 (CP 53, 54). Counsel ultimately chose not to call either of these witnesses because "neither could testify to any violent behavior of the victim toward anyone, including the defendant," and they "would not have survived cross-examination" by an experienced prosecutor. SCR, *Jones* II, Vol. 1 at 57, 58 (CP 53, 54). In addition, counsel stated that the State had rebuttal witnesses "who were there to testify that the victim was not mentally ill, nor violent in any way." SCR, *Jones* II, Vol. 1 at 57, 58 (CP 53, 54).

The Lee County Circuit Court held an evidentiary hearing. At the hearing, Jones called numerous witnesses, including his trial counsel, Laher and Bristow. Laher and Bristow testified about their strategic decisions *not* to: (1) request a mistrial after one or two jurors mistakenly received copies of Jones' unredacted statement; or (2) call Madge Jones and Tony Jones to testify at trial. SCR, *Jones* II, Vol. 3 at 47–85 (Tr. 44–82). Laher testified that "certainly we would have made a motion for mistrial if we felt the situation warranted it," but "evidently we fe[lt] like the curative efforts of the [c]ourt and what the juror said" resolved any issues. SCR, *Jones* II, Vol. 3 at 60 (Tr. 57); *see also id.* at 56–61, 74–75 (Tr. 53–58, 71–72). Laher also testified that he and Bristow "came to the conclusion" that it was likely "that [Madge's and Tony's testimonies] would hurt th[e] defense more on cross-

- 7 -

examination," and that he "was [thus] not comfortable calling them."  SCR, *Jones* II, Vol. 3 at 64 (Tr. 61).

Bristow similarly testified that while they "actually prepped [Madge] to testify, and [they] went over the questions that [they] were going to ask her," they ultimately decided not to call Madge because she (as the wife of the victim and grandmother of defendant) was "an emotional wreck" and "could not stay focused."  SCR, *Jones* II, Vol. 3 at 81–82 (Tr. 78–79); *see also id.* at 73–74, 77–79 (Tr. 70–71, 74–76).  Bristow also testified that he and Laher decided not to call Tony because they thought that he would not "be able to survive … the cross-examination of some seasoned veteran prosecutors."  SCR, *Jones* II, Vol. 3 at 78 (Tr. 75).  Bristow testified that their decision not to call Madge and Tony as witnesses at trial was a tactical one.  SCR, *Jones* II, Vol. 3 at 78 (Tr. 75).

The Lee County Circuit Court thoroughly discussed Jones' claims of ineffective assistance of trial counsel and the testimony from his trial counsel at the evidentiary hearing and denied post-conviction relief.  Exhibit D (Opinion and Order Denying Post-Conviction Relief); *see also* SCR, *Jones* II, Vol. 2 at 80–86 (CP 178–84).  The circuit court determined that "the actions of the defense counsel were deliberate and strategic in an effort to obtain a favorable result for the Petitioner," and "[a]s such, the Petitioner has wholly failed to meet the *Strickland* requirements."  Exhibit D at 4; SCR, *Jones* II, Vol. 2 at 83 (CP 181).

*Appeal of Denial of Post-Conviction Relief*

Jones appealed the Lee County Circuit Court's denial of post-conviction relief.  Jones, through counsel, again alleged the same claims of ineffective assistance of trial counsel for failing to:  (1) request a mistrial when a juror received unredacted copies of his statement to police; and (2) call Madge Jones and Tony Jones to testify at trial.  SCR, *Jones* II, Brief of Appellant.  Jones also again claimed that his mandatory life sentence constituted cruel and unusual punishment in violation of the

Eighth Amendment.  SCR, *Jones* II, Brief of Appellant.

In 2011 the Mississippi Court of Appeals thoroughly discussed and rejected Jones' claims.
Exhibit E (*Jones* II); *see also* SCR, *Jones* II, 122 So. 3d at 731–32, 736–37.  First, the court discussed
the trial testimony of two jurors who allegedly received, but did not read, an unredacted portion of
Jones' statement to police.  *Jones* II, 122 So. 3d at 731.  The court explained that the trial court
questioned the jurors on the issue—one confirmed that she did not read the unredacted portion, and
the other confirmed that she received the redacted copy.  *Id.*  The court determined that "defense
counsel were satisfied no prejudice had occurred"—based on Laher's express statement on the record
at trial that "the defendant is satisfied that nothing improper or accidentally was revealed[.]"  *Id.*  And
then at the evidentiary hearing on post-conviction review, Laher explained that "he thought moving
for a mistrial was unwarranted in part because of the curative efforts of the [c]ourt."  *Id.* at 731–32.
The court held that "these circumstances evince that Jones' attorneys' decision not to seek a mistrial
was a sound strategic decision[,]" and "does not constitute deficient performance."  *Id.* at 732.  The
court also concluded that, based on the testimony that "neither of the two questioned jurors, nor any
others, learned of the allegedly inadmissible extraneous portions of Jones' statement[,]" any "request
for a mistrial would have likely been futile."  *Id.*  Thus, "even assuming deficiency, Jones fail[ed] to
show resulting prejudice."  *Id.*

The Mississippi Court of Appeals also thoroughly discussed Jones' claim that his trial counsel
were ineffective for their decision not to call Madge Jones and Tony Jones to testify at trial.  *Jones* II,
122 So. 3d at 736–37.  As discussed above, "both of Jones' attorneys, Laher and Bristow, testified they
had met with Madge and Tony and considered calling them at trial.  However, concerns arose over the
perceived dangers associated with putting them on the stand."  *Id.* at 736.  The court determined that
the attorneys' testimony reflects that they "considered:  (1) the probative value of Madge's and Tony's

testimony, (2) their emotional state, (3) their ability to withstand tough questions on cross-examination, and (4) the State's rebuttal witness." *Id.* at 737. Indeed, the State's rebuttal witness, Michael Jones, who testified at the evidentiary hearing, "sharply contradicted Madge's and Tony's." *Id.* at 736. Therefore, the court concluded that, because Jones' trial counsel made a "calculated, strategic decision" not to call Madge and Tony to testify, it found "no error in the circuit court's finding that Jones failed to establish his attorneys were deficient." *Id.* at 737.

Finally, the Mississippi Court of Appeals rejected Jones' claim that his mandatory life sentence, as a juvenile, was cruel and unusual punishment in violation of the Eighth Amendment—based on that court's, the Mississippi Supreme Court's, and the Supreme Court's then-existing precedent. *Jones* II, 122 So. 3d at 740–41.

"Jones then petitioned [the Mississippi Supreme Court] for writ of certiorari, noting that two cases were pending before the United States Supreme Court which raised the issue of whether the Eighth Amendment forbids a sentence of life without parole for juveniles convicted of homicide." *Jones* III, 122 So. 3d at 699 (Exhibit F). While the appeal was pending, the Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), and the Mississippi Supreme Court "granted Jones' petition for writ of certiorari and ordered supplemental briefing on the application of *Miller*," limiting its review to that issue. *Jones* III, 122 So. 3d at 700; *see also Jones* III, Certiorari Folder. The Mississippi Supreme Court determined that "[f]ollowing *Miller*, Mississippi's current sentencing and parole statutes could not be followed in homicide cases involving juvenile defendants" unless the "*Miller* characteristics and circumstances have been considered by the sentencing authority." *Jones* III, 122 So. 3d at 702. The Mississippi Supreme Court thus affirmed the court of appeals decision, in part, but determined that *Miller* should be applied retroactively to cases on collateral review. *Id.* at 703. Accordingly, the Mississippi Supreme Court "vacated Jones' sentence and remanded the case to

the Circuit Court of Lee County for a new sentencing hearing to be conducted consistently with th[e

Mississippi Supreme Court's] opinion in *Parker*."[4]  *Id.*

**Resentencing**

The Lee County Circuit Court conducted a resentencing hearing on February 6, 2015.  The

court heard testimony from numerous witnesses—including Jones, Madge Jones (Jones'

grandmother), Marty Jones (Jones' brother), Enette Washington (Jones' mother), and Sharon Frost

(Jones' cousin)—who testified, among other things, about Jones' childhood, his alleged mental

problems, and his relationship with his girlfriend around the time of the murder.  SCR, *Jones* IV, Vol. 2

at 23–89 (Tr. 20–86).  Jerome Benton, a fire and safety manager at Walnut Grove men's correctional

facility, testified that Jones worked for him while he was incarcerated at Walnut Grove and that he was

smart, enjoyable, hard-working, got along with other inmates, and stayed out of trouble.  SCR, *Jones*

IV, Vol. 2 at 90–102 (Tr. 87–99).

On April 17, 2015, the Lee County Circuit Court "having conducted an evidentiary hearing

and considered those factors in *Jones* and *Miller*, as to whether or not defendant is entitled to the

benefit of the leniency provided, is of the opinion that the facts and circumstances of the murder, and

those factors bearing on such indicate that defendant is not so entitled."  Exhibit G (Resentencing

Order—the "April 2015 judgment"); *see also* SCR, *Jones* IV, Vol. 1 at 46 (CP 43).  The circuit court

further "dictated into the record at the time of resentencing those finding[s] supporting such denial."

Exhibit G; *see also* SCR, *Jones* IV, Vol. 1 at 46 (CP 43)); Vol. 2 at 139–44 (Tr. 136–41).  The circuit

court thus resentenced Jones to "serve a term of life imprisonment in the custody of the Mississippi

---

[4] In *Parker v. State*, 119 So.3d 987 (Miss. 2013), the Mississippi Supreme Court held that
*Miller* applies to the sentencing and parole statutes applicable to deliberate-design murder in this State.
*See id.* at 996–97 (¶¶ 21–23).

Department of Corrections."  Exhibit G; *see also* SCR, *Jones* IV, Vol. 1 at 46 (CP 43)); Vol. 2 at 146

(Tr. 143).

### Direct Appeal of the April 2015 Judgment on Resentencing

Jones appealed his new sentence imposed by the April 2015 judgment.  As summarized by the

Mississippi Court of Appeals, Jones alleged several assignments of error:

> (1) the circuit judge failed to comply with the legal standards and procedure mandated by *Miller* ... and *Parker* because
>
>> (A) the judge failed to apply *Miller's* presumption against imposing a life-without-parole sentence and
>>
>> (B) failed to consider each of the factors required by *Miller* and *Parker*;
>
> (2) he had a constitutional right to a jury at his new sentencing hearing on remand;
>
> (3) he has a constitutional right to parole eligibility because he is not irretrievably depraved;
>
> (4) the United States Constitution and Mississippi Constitution categorically prohibit a sentence of life without parole in all cases in which the offender was under the age of eighteen at the time of the offense.

Exhibit H (*Jones* IV, 285 So. 3d at 631).[5]  Jones also argued "that th[e c]ourt must reverse because the

sentencing judge did not make a specific 'finding' that he is irretrievably depraved, irreparably

corrupt, or permanently incorrigible."  *Jones* IV, 285 So. 3d at 632.  The court determined that it had

already recently rejected Jones' claims in (1)(A), (2), and (4), as well as the "permanently incorrigible"

issue, in *Cook v. State*, 242 So. 3d 865 (Miss. Ct. App. 2017). *Jones* IV, 285 So. 3d at 631–32. The

court further rejected Jones' remaining claims and affirmed "the decision of the circuit court denying

Jones' request for parole eligibility."  *Id.* at 634.  The Mississippi Supreme Court initially granted

---

[5] Relevant to the discussion of the instant case, Jones did not raise any of the grounds contained in the instant petition during his direct appeal of the new sentence (April 2015 sentence).

Jones' petition for writ of certiorari, but "upon further consideration," determined that "there is no need for further review and that the writ of certiorari should be dismissed." Exhibit I (*Jones v. State*, 2018 WL 10700848, at *1 (Miss. Nov. 27, 2018)).

The United States Supreme Court granted Jones' petition for writ of certiorari and heard oral argument. On April 22, 2021, the Court affirmed the decision of the Mississippi Court of Appeals and determined that "the Court has already ruled that a separate factual finding of permanent incorrigibility is not required" under *Miller* and *Montgomery*. Exhibit J (*Jones v. Mississippi*, 141 S. Ct. 1307, 1313 (2021)). The Supreme Court also held that "a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient." *Jones*, 141 S. Ct. at 1313.

**Current Federal Habeas Proceeding.**

On April 18, 2022, Jones filed his current federal petition for a writ of *habeas corpus* in this court. Doc. 1. As stated, Jones alleges two claims of ineffective assistance of trial counsel for (1) not requesting a mistrial when two jurors received unredacted copies of his statement to police and (2) not calling Madge Jones and Tony Jones to testify at trial. Doc. 1. Jones argues that his April 2015 judgment renders his federal *habeas corpus* petition timely. Doc. 1. Jones also requests that this court permit him to present unspecified, unexhausted claims.[6] Doc. 1 at 21.

**The Petitioner's Claims Are Not Barred
Under the Doctrine of Procedural Default**

The one-year federal *habeas corpus* limitations period begins to run when the conviction being challenged becomes final. *See* 28 U.S.C. § 2244(d)(1)(A). Jones' conviction thus became final

---

[6] Jones requests that the court "allow [him] to also present some other, key issues … that weren't fully exhausted." Doc. 1 at 21. Jones has not, however, stated what unexhausted claims he wishes to raise, and the law does not permit the court to grant relief on unexhausted claims. *See* 28 U.S.C. § 2254(b)(1)(A).

- 13 -

on April 22, 2021 – after the Mississippi Supreme Court affirmed the decision of the Mississippi Court of Appeals. Jones presented the two issues at bar regarding ineffective assistance of counsel (failure to request a mistrial and failure to call two witnesses at trial) to the Mississippi Supreme Court – which decided those issues again him. *See Jones v. State*, 122 So. 3d 725 (Miss. Ct. App. 2011), *reh'g denied*, Apr. 3, 2012, *aff'd in part, rev'd in part,* 122 So. 3d 698 (Miss. 2013) ("*Jones* II"). Thus, the Mississippi Supreme Court has had one "full and fair" opportunity to pass upon these issues. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999). Jones has exhausted state remedies as to these *issues* during his state PCR challenge to the initial *judgment*.

Nonetheless, the State argues that Jones must present these *issues* to the State's highest court a second time – because, when deciding the *issues* at bar the first time, the Mississippi Supreme Court was reviewing the first *judgment* (decided May 2005), not the current *judgment* of April 2015. In support of this argument, the State cites two cases: *Burton v. Stewart*, 549 U.S. 147, 156 (2007) and *In re Greenwood*, 2022 WL 501393 (5th Cir. Feb. 18, 2022) at *1 (citations omitted). Thus, the State argues that Jones must challenge the latest *judgment*, even though the Mississippi Supreme Court has already decided the *issues* against him (during his challenge to the initial judgment).

As discussed in detail below, both *Burton* and *Stewart* can be distinguished from the present case. In both of those cases, the new state court judgments changed only the sentence imposed, and the federal *habeas corpus* petitions also challenged only the sentence. In the present case, the new state court judgment changed only the sentence, but Jones has challenged the validity of his conviction. Further, and most importantly, this case is one of the rare instances where the doctrine of futility excuses Jones' failure to exhaust his claims as to the second judgment.

### Burton v. Stewart

In *Burton* the Supreme Court held that a second *habeas corpus* challenge to a single judgment

- 14 -

is a successive petition. *Burton, supra* at 152. This ultimate holding is a straightforward application of the *habeas corpus* statutes and cases relying on that statute. *See* 28 U.S.C. § 2244(b)(1)(A). The facts of *Burton*, were, however, a bit tangled, as the defendant had multiple judgments entered over time – and filed multiple *habeas corpus* petitions during the same period. The difficulty in *Burton* was matching each *habeas corpus* petition to the judgment under which Burton was incarcerated.

The state trial court initially entered judgment and sentence on December 19, 1994 (1994 judgment). *Id.* at 149. Burton was sentenced on that judgment to 562 months' incarceration based on two alternative rationales. *Id.* at 149-150. After an unrelated prior conviction was overturned, on Burton's motion, the trial court resentenced him, using one of alternative rationales, to 562 months' incarceration (1996 judgment). *Id.* at 150. The Washington Court of Appeals, however, remanded the case for resentencing because the new sentence raised vindictiveness concerns (as using the single rationale as the sole basis for the lengthy sentence decreased his potential for earning early release credits). *Id.* The trial court then entered a second amended judgment (1998 judgment) using the original basis for imposing the sentence. *Id.* at 151. The 1998 judgment was upheld both on appeal and postconviction review. *Id.*

On December 28, 1998, while state review of his conviction and sentence (the 1998 judgment) was pending, Burton filed a federal *habeas corpus* petition (1998 petition) seeking relief from his 1994 conviction, acknowledging that the *judgment under attack* was "[the] sentence I received at resentencing is on direct appeal" (the 1996 judgment). *Id.* at 152. The District Court denied relief, and the Ninth Circuit Court of Appeals affirmed. *Id.*

Over three years after filing his 1998 petition, Burton filed a second federal *habeas corpus* petition (2002 petition) – claiming to challenge solely the constitutionality of the sentence imposed under the 1998 judgment. The District Court denied the petition, and the Ninth Circuit affirmed. *Id.*

at 152. *Id.* The State argued that the petition was "second or successive," requiring Burton to first obtain an order from the appeals court authorizing him to file the 2002 petition in the District Court under 28 U.S.C. § 2244(b)(3). Both courts rejected this argument, finding that the District Court had jurisdiction to consider the petition, despite Burton's failure to obtain such an order from the Court of Appeals before filing the petition. *Id.*

The Supreme Court, however, found that the 2002 petition *was* "second or successive." *Id.* When Burton filed the first petition (1998 petition) he was in custody *pursuant to the 1998 judgment*. When he filed his second petition (2002 petition), he was *still* confined under the 1998 judgment. Hence, as the Supreme Court noted, "Burton twice brought claims contesting the same custody imposed by the same judgment of a state court." *Id.* at 153. The Washington trial court had entered three different judgments in Burton's criminal case, but he challenged the same judgment twice in a row.

*Burton* can be distinguished from the present case. In his federal *habeas corpus* petition, he challenged only his sentence (the part of the judgment that had changed), not the validity of his conviction (the part of the judgment that was unchanged). In addition, the issue in *Burton* was whether the 2002 petition qualified as a "second or successive" petition (which would require him to seek approval from the Court of Appeals before proceeding with the petition in District Court). *Burton* did not involve the issue regarding whether the second petition had been exhausted in state court, as the instant case does.

### In re Greenwood

The Fifth Circuit case of *In re Greenwood*, 2022 WL 501393 (5th Cir. Feb. 18, 2022) is similarly distinguishable. In 1998 Gregory Greenwood, who was 16 years old at the time, was convicted for murder and sentenced to life imprisonment (1998 judgment). *Greenwood, supra*, at 1.

- 16 -

In 2002 he filed a federal petition for a writ of *habeas corpus* (2002 petition), which the District Court dismissed as untimely; the Fifth Circuit denied his Certificate of Appealability. *Id.* The Supreme Court then decided *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 577 U.S. 190 (2016) – ultimately holding that the Eighth Amendment prohibits mandatory life sentences without parole for juvenile offenders (*Miller*), and that the holding in *Miller* is retroactive on state collateral review (*Montgomery*). *Id.* In Greenwood's state court challenge to his sentence, the State agreed that he should be resentenced to life with the possibility of parole, and, in February 2019, the parties entered into an "Agreed Order & Judgment" (2019 judgment) vacating the original sentence and resentencing him to life with eligibility for parole. *Id.* In August 2019, Greenwood filed a second petition for a writ of *habeas corpus* (2019 petition) in the District Court, which found the petition to be an unauthorized successive petition and transferred it to the Fifth Circuit. *Id.*

The Court of Appeals held that the 2019 petition was *not* successive because it challenged the 2019 judgment, not the 1998 judgment. *Id.* at 2. The Fifth Circuit noted that: (1) the 2019 judgment explicitly vacated the previous judgment; (2) the 2019 judgment imposed an entirely new sentence, rather than simply reinstating the previous sentence; and (3) the 2019 judgment left no count undisturbed, imposing a new sentence for the sole charge of conviction. *Id.* Thus, Greenwood could challenge the life-with-parole 2019 judgment through *habeas corpus* without seeking approval from the Fifth Circuit Court of Appeals, as it was separate and distinct from the 1998 judgment. *Id.*

Greenwood, like Burton, challenged only his sentence (the part of the judgment that had changed), not the validity of his conviction (the part of the judgment that was unchanged). Further, in *Greenwood*, as in *Burton*, the issue before the court was whether a later-filed *habeas corpus* petition qualified as a "second or successive" petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Neither case involved a determination whether the grounds in the second petition had

been exhausted, as the instant case does. Hence, these two cases are distinct from the present one.

### The Futility Doctrine

The dispositive issue regarding exhaustion in this case is that an attempt to exhaust state remedies would have been futile. The Fifth Circuit has noted an exception to the exhaustion requirement when the issue has been presented to – and rejected by – the state's highest court, and it would be "futile to present the claim to that court again." *Ortega v. Stephens*, 784 F.3d 250, 251 (5th Cir. 2015). In that case Ortega pled guilty to resisting arrest – and was later convicted for assault on a public servant regarding the same altercation. *Id.* at 251. On direct appeal, the Texas Court of Appeals vacated the conviction, holding that it violated the Double Jeopardy Clause. *Id.* On discretionary review, the Texas Court of Criminal Appeals reversed, holding that the assault conviction did not constitute double jeopardy – and remanded for consideration of other issues. *Id.* On remand, the Texas Court of Appeals affirmed the conviction. *Id.*

Ortega sought *habeas corpus* relief in the United States District Court for the Southern District of Texas, which denied the petition and a motion to reconsider. *Id.* at 251. Ortega appealed the denial and sought a Certificate of Appealability. *Id.* The Fifth Circuit, in denying Ortega's Application for a Certificate of Appealability, held that, though Ortega did not exhaust his state remedies by appealing the second judgment (the one affirming his conviction after remand), the case would not be dismissed for want of exhaustion. *Id.* at n. 1. The Fifth Circuit noted that, as the Court of Criminal Appeals had already rejected Ortega's double jeopardy claim; it would have been futile to present it to that court again. *Ortega*, 784 F.3d at 251.[7]

---

[7] The Fifth Circuit has decided other cases recognizing that the futility doctrine may excuse failure to exhaust state remedies. *See Fisher v. Texas*, 169 F.3d 295, 303 (5th Cir. 1999) ("The futility exception applies when, as here, the highest state court has recently decided the same

That is precisely what has occurred in the present case. The Mississippi Supreme Court has already rejected Jones' ineffective assistance of counsel claims regarding the failure to call Madge Jones and Tony Jones as witnesses at trial – and the failure to seek a mistrial when two jurors received unredacted copies of the petitioner's statement to police. *See Jones v. State*, 122 So. 3d 725 (Miss. Ct. App. 2011), *reh'g denied*, Apr. 3, 2012, *aff'd in part, rev'd in part,* 122 So. 3d 698 (Miss. 2013) ("*Jones* II"). Though a new judgment was later entered in this case, that judgment impacted only Jones' sentence – and had no effect on his underlying conviction. As such, Jones had no reason to present these claims to the Mississippi Supreme Court, the very court that rejected them in the first instance.

"[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999). State prisoners may provide that opportunity by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id*. Certainly, Jones has done so in the present case, as he presented these issues to the Mississippi Supreme Court, which then ruled on them.

In a different context (procedural bar in *habeas corpus* proceedings), the Fifth Circuit has

---

legal question adversely to the petitioner."); *Coleman v. Goodwin*, 833 F.3d 537, 543 (5th Cir. 2016) (excusing exhaustion on futility grounds when a state's procedural framework "makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim … on direct appeal...."). Lower courts have likewise recognized the futility exception. *See, e.g. Helton v. Davis*, No. 7:18-CV-286, 2019 WL 7373043, at *4 (S.D. Tex. Nov. 18, 2019), *report and recommendation adopted,* No. CV M-18-286, 2019 WL 7371984 (S.D. Tex. Dec. 30, 2019); *Carpenter v. Davis*, No. 6:19-CV-00013-H, 2019 WL 5068642, at *4 (N.D. Tex. Oct. 9, 2019); and *Curtis v. Warden, Ouachita Corr. Ctr.*, No. CIV. A. 10-0169, 2010 WL 2025103, at *2 (W.D. La. May 18, 2010).

recognized the merit of foregoing "needless 'judicial ping-pong'" to avoid sending a claim back to state court when, procedurally, it would be dead on arrival there. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Instead, the District Court may simply rule on that issue. The same principle applies in this case. Presenting the identical claims – on identical facts – arising out of the same trial – regarding the same defendant – to the Mississippi Supreme Court (which has already rejected those same claims, on those facts, as to that defendant) is the epitome of "needless judicial ping-pong." Doing so would be futile – and a waste of the parties' and the courts' time. The court will thus excuse Jones' failure to exhaust these claims for this reason and examine them.

### Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered all the petitioner's grounds for relief on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's

claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to any grounds of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

## Discussion

Jones sets forth two claims of ineffective assistance of trial counsel: (1) failing to request a mistrial when two jurors received unredacted copies of his statement to police, and (2) failing to call Madge Jones and Tony Jones to testify at trial. Doc. 1. The Mississippi Supreme Court decided the merits of these issues against him.

## Ineffective Assistance of Counsel

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

- 22 -

**Failing to Request a Mistrial**

As set forth above, at least one juror received an unredacted copy of Jones' statement to police; the redactions had removed from the statement references to Jones' prior treatment for anger management in accordance with the trial court's order. Doc. 7-10 at 17, 56-61, 65-66 (CM/ECF pagination). One juror noticed that her copy of the transcript contained words that did not track with the version presented in the courtroom. *Id*. at 56-61. She called the trial court's attention to the discrepancy, and the court considered the matter. *Id.* Counsel and the court determined that two jurors might have received the unredacted copies. *Id.* The first juror, who had noticed the problem, stated that she paid no attention to the extra words and could not remember what they were, and the other juror said she received a proper, redacted, copy that tracked the version presented at trial. *Id.* at 65-66. The court offered to give a curative instruction or, if convinced, to declare a mistrial. Doc. 7-3 at 72-73. Jones' counsel conferred and were satisfied that, since neither juror knew what the additional text said, the matter was resolved – and that a motion for mistrial was unnecessary. Doc. 7-10 at 59-61, 65-66. Bristow stated, "Based on the responses of two jurors, the defense is satisfied that nothing improper or accidentally was revealed, so we are satisfied." Doc. 7-3 at 74-75.

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland, supra*, at 690. In this case, the trial court, Jones' counsel, and the prosecution investigated the issue and determined that the incident caused no harm. One juror received a proper redacted copy of the transcript, and, even though the other juror got a glimpse of the unredacted text, she just skipped it and could not recall what it said. Thus, according to the testimony of the affected jurors, neither considered the redacted text. The Mississippi Supreme Court thus rejected Jones' claims of ineffective assistance of counsel. *Jones v. State*, 122 So. 3d 725 (Miss. Ct. App. 2011), *reh'g denied*, Apr. 3, 2012, *aff'd in*

*part, rev'd in part,* 122 So. 3d 698 (Miss. 2013) ("*Jones* II").

The petitioner notes that, Juror Lyons stated that she received three copies of the transcript, but only accounted for two of them – the unredacted one she used – and the one she passed to Ms. Ruth. The petitioner has offered no proof that: (1) the third transcript was unredacted; (2) another juror read the unredacted text and remembered its contents; or (3) if so, that knowledge of the unredacted text caused the jury to find him guilty. As such, Jones has not shown that he was prejudiced by counsel's decision. He has not shown that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong, supra.*

As counsel's decision not to seek a mistrial under these circumstances was reasonable, the Mississippi Supreme Court's decision rejecting the ineffective assistance of counsel claim arising out of that decision was neither contrary to, nor an unreasonable application of, clearly established federal law. Neither did the state's highest court determine the facts unreasonably in light of the evidence presented. As such, this claim for relief is without merit and will be denied.

### Failing to Call Madge Jones and Tony Jones as Trial Witnesses

Jones alleges that his grandmother, Madge Jones, and Tony Jones (son of the deceased, father of the defendant), would have testified that the victim, Bertis Jones, had become mentally unstable, agitated, and potentially violent in the months leading up to the murder. Doc. 1 at 13 (CM/ECF pagination). As the petitioner's defense strategy was to show that he killed his grandfather in self-defense, such testimony would have been relevant. However, though these witnesses may have given testimony providing a modicum of support to the theory of self-defense, as discussed below, they could also have provided testimony detrimental to the defense – and opened the door to rebuttal testimony from prosecution witnesses.

- 24 -

Trial counsel "extensively interviewed … Madge Jones and Tony Jones" and discovered potential problems with calling them as witnesses. SCR, *Jones* II, Vol. 1 at 57, 58 (CP 53, 54). First, neither witness was present when the crime occurred. *Id.* In addition, "neither could testify to any violent behavior of the victim toward anyone, including the defendant," and they "would not have survived cross-examination" by an experienced prosecutor. *Id.* Madge, the wife of the victim and grandmother of defendant, was understandably "an emotional wreck" and "could not stay focused."[8] SCR, *Jones* II, Vol. 3 at 81–82 (Tr. 78–79); *see also id.* at 73–74, 77–79 (Tr. 70–71, 74–76). Bristow and Laher decided not to call Tony because they thought that he would not "be able to survive … the cross-examination of some seasoned veteran prosecutors." SCR, *Jones* II, Vol. 3 at 78 (Tr. 75). Bristow testified that their decision not to call Madge and Tony as witnesses at trial was a tactical one. SCR, *Jones* II, Vol. 3 at 78 (Tr. 75). In addition, the defense used Jones' testimony to paint a picture that his grandfather's behavior had become increasingly erratic. Doc. 7-10 at 74. Finally, counsel testified that the State had rebuttal witnesses (including the son of the victim) "who were there to testify that the victim was not mentally ill, nor violent in any way." *Id.* For these reasons, counsel ultimately chose not to call either of these witnesses. *Id.*

Jones' counsel interviewed the witnesses and determined that they had little to offer in support of his defense – and could potentially harm his defense during cross-examination. Doc. 7-10 at 64 (CM/ECF pagination). In addition, their testimony would open the door for the State to introduce rebuttal witnesses to testify that the victim showed no sign of mental health problems. *Id.* at 64, 73-74, 77-79. Counsel made the tactical decision not to call these witnesses (*id.* at 79), and, having

---

[8] Even at the post-conviction relief evidentiary hearing held several years later, Madge Jones' testimony was disjointed and difficult to follow. Doc. 7-10 at 27-43.

reviewed their testimony (and that of defense counsel) from the state post-conviction hearing, the court finds that decision to be reasonable. As counsel's decision not to call these witnesses was reasonable, the Mississippi Supreme Court's decision rejecting the petitioner's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Neither did the Mississippi Supreme Court determine the facts unreasonably in light of the evidence presented. As such, this claim for relief is without merit and will be denied.

**Conclusion**

For the reasons set forth above, the motion by the State to dismiss the instant petition as procedurally defaulted will be denied. Nonetheless, the petition will be denied, as the grounds for relief in the petition were decided on the merits in state court, and the petitioner has not shown that the state court unreasonably applied federal law – or determined the facts unreasonably in light of the evidence presented. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 14th day of February, 2023.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI